# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**LARRY A. HAMRICK,**
**Claimant Below, Petitioner**

**FILED**

October 26, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 15-0868**  (BOR Appeal No. 2050261)
                          (Claim No. 2000046653)

**EASTERN ASSOCIATED COAL, LLC,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Larry A. Hamrick, by Robert L. Stultz, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Eastern Associated Coal, LLC, by, its attorney, Henry C. Bowen, filed a timely response.

This appeal arises from the Board of Review's Final Decision dated August 20, 2015, in which the Board affirmed a February 13, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's March 7, 2013, decision denying the application for a permanent total disability award. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Hamrick filed an application for a permanent total disability award on March 3, 2003, after sustaining multiple work-related accidents over the course of the years. Mr. Hamrick was incarcerated for an unknown period of time between the date his application was filed and November 4, 2008, when he was evaluated by Charles Werntz., M.D.  In the social history section of his report, Dr. Werntz stated, "[o]f note, this claimant apparently had been awarded [a] Social Security Disability award in the past. He was subsequently incarcerated and his Social

1

Security Disability benefits were suspended. Those benefits have not been restarted at this time. He is currently residing in a halfway house, and we were required to notify them of his arrival and departure from our clinic." Dr. Werntz assessed Mr. Hamrick's whole body impairment according to both the Tables found in West Virginia Code of State Rules §85-20 (2005) and the range of motion model of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4[th] ed. 1993). Dr. Werntz then assessed a combined whole body impairment of 28%, using the tables found in West Virginia Code of State Rules §85-20.

On May 20, 2010, Charles Weise, M.D., performed a psychiatric evaluation. He diagnosed Mr. Hamrick with depressive disorder and assessed 3% permanent impairment. The Permanent Total Disability Review Board issued its final recommendations on March 18, 2011. It adopted the impairment ratings assigned by Dr. Werntz and Dr. Weise, with one exception. It felt that Mr. Hamrick should have been assessed 5% impairment for the thoracic spine, which would make the total combined impairment for the orthopedic conditions 31%. The Permanent Total Disability Review Board then concluded that Mr. Hamrick sustained 34% whole person impairment. Therefore, he failed to meet the 40% whole person impairment threshold required for further consideration of a permanent total disability award pursuant to West Virginia Code §23-4-6(n)(1) (2005). On April 8, 2011, the claims administrator denied Mr. Hamrick's request for a permanent total disability award.

Mr. Hamrick protested the claims administrator's denial of his request for a permanent total disability award. On September 26, 2011, the Office of Judges reversed the claims administrator's decision. The Office of Judges relied on Dr. Werntz's evaluation and agreed with his assessment methods regarding the impairment. However, it determined that Dr. Werntz should have used the range of motion model of the American Medical Association *Guides* in assessing the final whole body impairment rating because that was the legal standard in effect when Mr. Hamrick submitted his application for a permanent total disability award. Using that model, the Office of Judges determined Mr. Hamrick had 55% whole person impairment, which met the threshold required for consideration of a permanent total disability award. Therefore, the Office of Judges ordered the claims administrator to refer Mr. Hamrick to the Permanent Total Disability Review Board for an evaluation.

On April 6, 2012, the Board of Review found that the Permanent Total Disability Review Board utilized the Tables contained in West Virginia Code of State Rules §85-20 in assessing whole person impairment but that the Office of Judges found it unfair to do so. Therefore, the Board of Review remanded the claim to the claims administrator with instructions for the claims administrator to refer Mr. Hamrick to the Permanent Total Disability Review Board for reconsideration. It further ordered the Permanent Total Disability Review Board to address the issue of whether the Tables found in the West Virginia Code of State Rules §85-20 or the range of motion model of the American Medical Association's *Guides* should be applied in assessing impairment.

After reconsideration, the Permanent Total Disability Review Board issued its final recommendations on February 11, 2013. It did not specifically address the issue presented to it by the Board of Review. However, it concluded Mr. Hamrick sustained 54% whole person

impairment, thus relying on the range of motion model of the American Medical Association's *Guides* in determining the whole person impairment to be considered in making its recommendations. After determining Mr. Hamrick met the medical impairment threshold, it turned to a vocational review.

The Permanent Total Disability Review Board reviewed the Functional Capacity Evaluation performed on September 28, 2001, by Parker Grimes, M.S., O.T. The evaluation demonstrated Mr. Hamrick had the ability to perform at a medium level, although a functional limitation of pain was reported. It reviewed the October 30, 2001, report of Charles Lefebure, M.D., who opined that rehabilitation would be appropriate to return Mr. Hamrick to active, functional employment. It reviewed the February 22, 2002, medical record of Kevin Clarke, M.D., stating Mr. Hamrick should continue physical therapy and work hardening. It reviewed the report of Jack Koay, M.D., who evaluated Mr. Hamrick on November 11, 2002. Dr. Koay noted Mr. Hamrick was unemployed due to problems with his neck, that he did not want to work anymore, and that he wanted to retire. Dr. Koay diagnosed mild left carpal tunnel syndrome and mild left sensory ulnar neuropathy.

The Permanent Total Disability Review Board also reviewed the report of Dr. Werntz, who encouraged Mr. Hamrick to return to work, even though he had adopted a disabled lifestyle and exhibited multiple pain behaviors. Dr. Werntz opined Mr. Hamrick would have difficulty with jobs that required significant walking, that required much lifting, or that required carrying over ten pounds. It reviewed the results of a Total Disability Functional Capacity Evaluation that was performed on April 17, 2009, by Art Lilly, P.T. Mr. Lilly noted Mr. Hamrick was able to perform light demand activities. However, the test was self-limiting with reports of high pain levels even though Mr. Hamrick's blood pressure and heart rate were within normal limits. Therefore, the report should not be used for vocational planning. Mr. Lilly noted Mr. Hamrick's psychosocial issues outweighed his functional capabilities.

The Permanent Total Disability Review Board also reviewed the vocational report of Leslie Stahl, M.A. Her October 29, 2009, report states, "[a]s far as his incarceration was concerned, Mr. Hamrick relayed that he was in a fight in 2006, and was granted a felony record. Then he was caught with ten guns, eight were registered in his name, and he was sentenced to 62 months in federal prison, and is now on probation." Ms. Stahl identified sedentary/light jobs that might be available to Mr. Hamrick, including cashier, host, demonstrator, sales representative, security guard, and dispatcher. In her opinion, Mr. Hamrick retained a great deal of hands-on mechanical skill. In addition, she believed he would be a candidate for vocational rehabilitation.

The Permanent Total Disability Review Board found Mr. Hamrick had a GED with some limitations in reading and that he was able to function at the light physical demand level. Therefore, Mr. Hamrick was not permanently and totally disabled. It recommended Mr. Hamrick's application for permanent total disability benefits be denied. On March 7, 2013, the claims administrator denied Mr. Hamrick's request for a permanent total disability award.

The Office of Judges affirmed the claims administrator's decision in its February 13, 2015, Order. It noted that a records review was performed by Lisa Goudy, M.S., C.R.C., L.P.C.,

on November 18, 2013, regarding the employability of Mr. Hamrick. She did not believe he would be able to return to substantial employment given his age, education, work experience, and the residual effects of his injuries. She did not believe vocational rehabilitation was advisable.

The Office of Judges noted that the exact level of Mr. Hamrick's physical functioning was unclear from the record. Dr. Werntz found that Mr. Hamrick would have "quite a bit of difficulty with jobs that required a significant amount of walking as well as jobs that require much lifting or carrying over ten pounds". This was interpreted by both vocational evaluators as limiting Mr. Hamrick to sedentary work only, which was an interpretation with which the Office of Judges did not agree. The Office of Judges, therefore, took the findings of Dr. Werntz and applied them to the job openings suggested in the record, taking the vocational factors that may be impediments to obtaining a job into consideration. This included the fact that Mr. Hamrick obtained his GED but had difficulty with reading, that he had no training outside of the coal mining industry, and that he had limited transferable job skills. The Office of Judges noted the ability to obtain and sustain a particular type of employment is not relevant. It noted the report of Ms. Stahl was over five years old and the report of Ms. Goudy did not include a job survey. However, using jobs identified by Ms. Stahl, the Office of Judges determined Mr. Hamrick would not be precluded from working as a dispatcher, greeter, sales representative, or demonstrator. Therefore, the Office of Judges determined Mr. Hamrick failed to demonstrate that he is permanently and totally disabled.

The Office of Judges also took issue with the extended period of time between the date of the filing of the application and the date of the final decision by the claims administrator. It noted it took ten years for the claims administrator to issue its decision. It also noted it was unclear how much of a delay was caused by Mr. Hamrick's incarceration, but the delay resulted in a dated record.

The Board of Review adopted the findings of fact and conclusions of the Office of Judges in its August, 20, 2015, decision and affirmed the Order. After review, we agree with the reasoning of the Office of Judges and the conclusions of the Board of Review. The denial of Mr. Hamrick's request for a permanent total disability award is supported by the evidence, particularly the Permanent Total Disability Review Board's review of the evidence and its recommendation.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: October 26, 2016**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II


**DISSENTING**:
Chief Justice Menis E. Ketchum

Justice Brent D. Benjamin, Not Participating